CINCINNATI, N. O. & T. P. RY. CO. v. DAVIS.

(Circuit Court of Appeals, Sixth Circuit. May 14, 1908.)

No. 1,779.

RAILROADS—INJURY TO PERSON ON TRACK—LIABILITY UNDER TENNESSEE STATUTE.

Shannon's Code Tenn. §§ 1574, 1575, which require a railroad company to keep some one on the locomotive always on the lookout ahead, and if any person, animal, or other obstruction appears on the track to sound the whistle and employ every possible means to stop the train, and make a company which fails to observe such precautions responsible for all damages resulting from any accident or collision, as construed by the Supreme Court of the state, apply to the case of a train being backed on a passing track at a station while waiting for the passing of another train on the main track, and make the company liable for the injury of a person run over by such train, where, owing to its length, those in the engine could not see the track in front of the moving cars.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1257–1266.]

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

R. M. Jones, for plaintiff in error.

H. Reed, Morrow & Waddle and J. C. J. Williams, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This is an action brought by the plaintiff, suing by a next friend, to recover damages resulting from an injury caused by the negligence of the railway company in failing to keep a proper lookout and give the proper signals while moving one of its trains in its yard at a station on its road called Oneida. There was evidence at the trial tending to show, and from which the jury might have found, the following facts: The railroad at this place runs north and south. There were four tracks on the west side of the station house, the first and nearest of which was the main line. The second track was a passing track, that is, for the use of trains meeting and passing there. The third and fourth tracks were used for switching purposes in or-ganizing or reorganizing trains. The train which injured the plain-tiff was a freight train, which had some time before come into that station and had passed onto one of the switching tracks in order to let out or take in some cars. It had completed its work on the switch-ing tracks, and had moved out upon the passing track where it had stood ready to go for half an hour or more before the accident. The engine was headed north; but it could not proceed because of other trains standing in front of it on the passing track. All these trains had been waiting for a passenger train to pass the station on the main line. The plaintiff, who was a boy eight years old, was returning to his home on the east side from the west side of the tracks on a path which had for many years been used by the public as a crossing. When he reached this freight train he found the rear end of it stand-ing over the crossing and extending a little to the south. He turned out and went around the rear end, and while he was doing this the engineer suddenly and without warning commenced to back the train down to a switch at the south end of the yards leading onto the main track, from whence the train would take up its passage to the north. There was no lookout at the rear at the time the train was driven back, and the plaintiff was not seen. The plaintiff was struck by the rear car of the train and thrown upon the track, where both his feet were crushed by the wheels so badly that amputation became neces-sary.

At the conclusion of the evidence counsel for the railway company requested the court to instruct the jury that the plaintiff was not en-titled to recover, and that they should find for the defendant. This the court refused, and the counsel for the defendant excepted. The verdict was for the plaintiff in the sum of $7,500, and judgment was given accordingly.

The case turns upon the construction and effect of a Tennessee statute imposing certain duties upon railway companies while operat-ing their trains, and provides as follows:

"Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down and every possible means employed to stop the train and prevent an accident." Acts 1857-58, p. 54, c. 44, § 3; Shan-non's Code, § 1571 (4).

"Every railroad company that fails to observe these precautions, or cause them to be observed by its agents and servants, shall be responsible for all

damages to persons or property occasioned by, or resulting from, any accident or collision that may occur." Shannon's Code, § 1575.

"No railway company that observes, or causes to be observed, these precautions shall be responsible for any damages done to person or property on its road. The proof that it has observed said precautions shall be upon the company." Shannon's Code, § 1576.

The precautions here mentioned were not complied with in this instance. If this statute is applicable to the facts of this case, the verdict and judgment were warranted. The trial judge held that it did apply, and so instructed the jury. If he was wrong, the judgment must be reversed. There is no other ground on which the case could have been taken from the jury. On its face the statute applies to all cases where the circumstances mentioned in the statute exist; but it has been construed by the Supreme Court of Tennessee as not extending to cases where a compliance with its provisions would be impossible or extremely difficult or embarrassing. In other words, that court has applied a well-known rule of statutory construction that it is to be presumed that a statute was not intended to apply to exceptional cases, when its application would be attended by such consequences. Accordingly it has been held that it does not apply to the operation of railways in switching yards; the reason being that in such places the individual cars or parts of trains are being constantly shifted about in various directions and hardly ever in one direction for any length of time, and it is necessary that some should be run upon the track a little distance, and often toward nearby places which a particular car is not intended to reach; in short, when the observance of the statute would paralyze the necessary operations in the switching yards, or embarrass them to such an extent as to make them impracticable. Railroad Co. v. Pugh, 95 Tenn. 419, 32 S. W. 311. In Southern Ry. Co. v. Simpson, 131 Fed. 705, 65 C. C. A. 563, a case coming here from Tennessee, where an engine was running backward with a tender in front, in the daytime, but the evidence tended to show that the engineer was on the lookout ahead and saw the vehicle in which the plaintiff was riding as soon as if the engine were running the other way, and he then performed the other requirements of the statute, we held the Tennessee law was complied with. The Tennessee cases were there fully considered in the opinion delivered by Judge Lurton, and there is no need to rehearse them now.

In the present instance there is no reason which would justify a disregard of the statute, or imposing upon it the limitation which has been found necessary in other conditions. This train had been on the switching tracks; but it had for some time been on the passing track, fully organized for proceeding on its trip. True, it had to go back to the switch before it proceeded on its main course; but its position was in no respect different from any passing train. The circumstance that it had some time before been in the switching yard was of no importance whatever. The Supreme Court of Tennessee holds that the statute applies to all moving trains, and that if the railway company disables itself from complying with it by pushing its train backward it is absolutely liable for the consequences of moving a train in this way, instead of so moving it that it could have been relieved

from liability for accidents by complying with the statute. In the Simpson Case, supra, though the engine was running backward the engineer was not deprived of the means of complying with the statute. Here there was a long train of cars in front, and those on the engine could not see the track on which the cars were moving. In Railroad Co. v. Dies, 98 Tenn. 655, 41 S. W. 860, the engine was running backward in the night with no headlight on the tender. The darkness of the night in that case, and the intervening train of cars in this, alike prevented the engineer from looking ahead.

The local law as construed by the highest state court furnishes the guide for the federal courts; and we think the court below gave the law to the jury correctly when it told them that the statute so construed applied to this case.

It is not important for us to consider the question of negligence on the part of the plaintiff, since by another statute of Tennessee the negligence of the plaintiff is not a bar, but goes only to the mitigation of the damages. The court instructed the jury upon that subject in a manner not now complained of. Our conclusion upon the principal question disposes of the case.

The judgment must be affirmed, with costs.