SLATER v. ILLINOIS CENT. R. CO.

(Circuit Court, M. D. Tennessee, Nashville Division. September 30, 1911.)

No. 3,671.

1. RAILROADS (§ 282*)—TRESPASSERS—INJURIES—DEFECTIVE APPLIANCES.

Where decedent was a trespasser on defendant's freight train at the time he received injuries from which he died, an averment that he was injured through defective appliances and the inefficiency and unskillfulness of the operation of the train was insufficient to show liability, in the absence of an averment of wanton and intentional wrong or injury to him after defendant's operatives became aware of his danger.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 910–923; Dec. Dig. § 282.*]

2. RAILROADS (§ 281*)—INJURIES TO PERSONS ON TRAIN—TRESPASSERS—CARE AFTER INJURY—TREATMENT—WANTON NEGLIGENCE.

Decedent, while riding on one of defendant's freight trains as it was rounding a curve, was thrown from the train by reason of a defective coupling of the engine and cars and the negligence of the operatives in running the train. One of his legs was cut off, and the other badly cut; but his injuries were not necessarily fatal. While utterly helpless and bleeding profusely, he was placed by defendant's agents and servants over his protest in an unheated box car, where he was allowed to remain, also against his protest, without medical attention or other care, for about four hours, and in consequence of such exposure and negligence he bled to death before reaching a hospital to which he was subsequently taken. *Held* that, though defendant was not liable for the original injury, its servants having assumed control over decedent over his protest and with knowledge of his imminent peril, their conduct amounted to wanton negligence in decedent's treatment, for which defendant was liable.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 902–909; Dec. Dig. § 281.*]

At Law. Action by Frederick E. Slater, administrator, etc., against the Illinois Cenrtal Railroad' Company. On demurrer to declaration. Overruled.

This suit was brought by the plaintiff, as administrator, to recover damages for the death of his intestate. The declaration alleged that the plaintiff's intestate, while riding, with a friend, on one of the defendant's freight trains, and rounding a curve, was, by reason of the defective coupling of the engine and cars and the inefficiency, unskillfulness and negligence of the railway employés in the manner of running the train, thrpwn from the train, falling between the cars, and run over; that one of his legs was entirely cut off, and the other badly cut, his injuries being serious but not fatal; that, after the plaintiff's intestate had been thus injured and rendered utterly helpless and was bleeding profusely from both legs, the defendant's agents and servants, over his protest, placed him in an unheated work or box car; on a siding, where he was allowed to remain, over his protest, without medical attention or other care, for about four hours, and without any effort to procure a physician or other medical aid, in consequence of which exposure and neglect he bled to death before reaching the hospital to which he was subsequently taken;

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and that his death was due to the wanton negligence of the defendant's agents in placing him in a position where he could not receive proper medical attention, until it was too late, and leaving him unattended and permitting him to die from hemorrhage, where if he had been permitted to call medical aid, he could, and would, have recovered from the injuries.

The defendant demurred to the declaration on the grounds, among others; that it appeared that the plaintiff's intestate received the injuries from which he died while riding as a trespasser on the defendant's train, and without fault or neglect on its part; and that it owed him no duty to secure him proper medical attention after being so injured, and could not be held liable for the failure of its employés to aid him in this respect.

Perkins Baxter and J. H. Zarecor, both of Nashville, Tenn., for plaintiff.

Robin J. Cooper, of Nashville, Tenn., for defendant.

SANFORD, District Judge. Plaintiff, in the declaration, does not seek a recovery for the injuries to his intestate resulting in the cutting off of his leg, but to recover damages for his death due to the alleged wanton neglect of the defendant's agents and employés to procure medical attention for the plaintiff's intestate after they had taken him in charge after the accident and removed him, over his protest, about a mile from the scene of the accident and placed him in a work or box car on the siding.

[1] The declaration does not show that plaintiff's intestate was riding on the defendant's freight train either as a passenger or as a licensee; and since it is entirely consistent with the averments of the declaration that the plaintiff's intestate was riding on the freight train as a trespasser (this appearing to be the theory upon which plaintiff's brief is based), the averment that he was injured through defective appliances and the inefficiency and unskillfulness of the employés operating the train, is clearly insufficient to show liability for the original injury to such trespasser, in the absence of any averment of wanton and intentional wrong or injury to the plaintiff's intestate after becoming aware of the danger in which he stood. Kansas City, F. S. & M. R. Co. v. Cook (C. C. A., 6) 66 Fed. 115, 122, 13 C. C. A. 364, 28 L. R. A. 181; Felton v. Aubrey (C. C. A., 6) 74 Fed. 350, 356, 20 C. C. A. 436; Louisville & N. R. R. Co. v. Womack (C. C. A., 6) 173 Fed. 752, 754, 97 C. C. A. 559; Railroad v. Meacham, 91 Tenn. 428, 431, 19 S. W. 232; Hoskins v. Railroad (Ky.) 30 S. W. 643; Brown's Adm'r v. Railroad, 97 Ky. 228, 30 S. W. 639; Gherkins v. Railway Co. (Ky.) 30 S. W. 651.

[2] The plaintiff's case, if maintainable, must then rest solely on the averment in the declaration of the wanton negligence of the defendant's agents and employés in failing to care for the plaintiff's intestate after he had been injured and taken charge of by them. Upon the question whether a defendant who has injured another, without fault, under such circumstances that there is no legal liability for the original injury, owes such legal duty to the injured person when in a helpless condition, based upon the obligations of humanity, to prevent an aggravation of the injury from lack of proper care, as to render the defendant legally liable for the failure to exercise such care, there is a direct conflict of authority. This question is fully considered and

the authorities upon both sides of the question cited in a valuable note to the case of Union Pac. R. Co. v. Cappier, in 69 L. R. A. 513, especially in the section "V. a." at p. 533, dealing with the "obligation to prevent aggravation of injury." The view that a legal duty arises in such cases, upon which an action may be based for failure to exercise due care of the injured person, is supported by the cases of Northern C. R. Co. v. State, 29 Md. 420, 96 Am. Dec. 545, Baltimore & O. R. Co. v. State, 41 Md. 268, and Whitesides v. Southern R. Co., 128 N. C. 229, 38 S. E. 878; also, by Beach on Contrib. Neg., sec. 215, and 2 Thompson on Negligence, sec. 1744. The opposite view, that no legal duty arises on the part of the defendant in such case to care for the injured person and no right of action hence accrues, is supported by the cases of Griswold v. Railroad Co., 183 Mass. 434, 67 N. E. 354, Kendall v. Louisville & N. R. Co., 25 Ky. Law Rep. 793, 76 S. W. 376, and Union Pac. R. Co. v. Cappier, 66 Kan. 649, 72 Pac. 281, 69 L. R. A. 513.

Without determining the abstract question on which the authorities have thus differed, it is sufficient to say that the instant case presents an entirely different situation. According to the averments of the declaration, after the leg of the plaintiff's intestate had been cut off and the plaintiff's intestate rendered utterly helpless, defendant's agents and servants took the plaintiff's intestate and, placed him in a car or caboose of the defendant, against his protest, backed the car about a mile to Krebs, Ky., and there placed him in a work or box car on the siding, where he was allowed to remain, over his protest, without medical attention or other care for the space of four hours, although the agents and servants saw and knew that he was bleeding profusely from both of his legs on account of the injuries, and that with prompt medical aid his life could have been saved, and although the plaintiff's intestate was begging and asking that he be carried to Paducah, Ky., which could be reached in a twenty minutes run and where medical aid could be secured, and that after he was finally placed upon a freight train to be carried to Paducah he had, in consequence of his exposure, lost so much blood that after reaching Paducah he died before reaching the hospital.

A direct authority sustaining the liability of the defendant in such case is found in the case of Dyche v. Railroad Co., 79 Miss. 361, 30 South. 711, in which it was held that where a railroad company had injured a trespasser under such circumstances that it could not be held liable for the original injury, if it assumed charge of the injured person when in a helpless condition and shipped him to another place from that at which he had been injured, it was charged with the duty of ordinary humanity in taking care of him while he was thus in its charge. There seems to be no case holding to the contrary under an analogous situation, although in the case of Griswold v. Railroad Co., supra, the Dyche Case is criticised as proceeding upon a "singular ground." After careful consideration, however, I am of opinion that the doctrine of the Dyche Case is applicable to the present situation, and that, whatever may be the abstract duty of a railroad company or one who has injured another to give him proper care and attention, regardless of liability for the injury, if the defendant assumes to

take charge of an injured person in a helpless condition, over his protest, and to remove him from the scene of the accident, where other persons acting under the dictates of common humanity might be expected to see that he received proper care and medical attention, and to keep him in the defendant's exclusive custody and charge, over his protest, there arises, while the injured person is being held in charge over his protest, a legal as well as moral obligation to exercise due care concerning him, including the obligation to exercise reasonable care to see that he has medical aid and attention, especially where it is clear that if such medical attention is not employed the injuries are of such character that death will probably ensue.

The present case, under the averments of the declaration, is much stronger on the facts than that presented in the Dyche Case. The averments of the declaration show wanton neglect of the injured person, while being detained in the custody and charge of the defendant and over his protest. And just as it has been repeatedly held, as shown in Kansas City, F. S. & M. R. Co. v. Cook, supra, and the other cases first cited in this opinion, that while a railroad company is not liable to a trespasser on the track for the want of ordinary care, it is liable for wanton and intentional injury to him after it becomes aware of his danger, so I think it clear, by a parity of reasoning, that even in a case where it is not in fault concerning the original injury, if it assumes control of the injured person over his protest and with knowledge of the imminent peril due to his condition, it is liable for wanton negligence in its treatment of him while thus retained in its custody and charge and under its control.

The demurrer to the declaration will accordingly be overruled.