## COUTURE v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.  March 12, 1919.)

No. 5217.

1. LARCENY ⊕⇒7—STEALING PROPERTY OF UNITED STATES.
    One is not guilty of stealing property of the United States, in violation of Penal Code, § 47 (Comp. St. § 10214), where it was the property of and in custody of an Indian, though he was under the guardianship of the United States.

2. CRIMINAL LAW ⊕⇒10—COMMON-LAW OFFENSES.
    There are no common-law offenses against the United States.

In Error to the District Court of the United States for the District of North Dakota; Martin J. Wade, Judge.

Joseph Couture was convicted of stealing property of the United States, and brings error.  Reversed.

E. T. Burke, of Bismarck, N. D., and Sullivan & Sullivan, of Mandan, N. D., for plaintiff in error.

M. A. Hildreth, U. S. Atty., of Fargo, N. D. (John Carmody, Asst. U. S. Atty., of Fargo, N. D., on the brief), for the United States.

Before HOOK and CARLAND, Circuit Judges.

CARLAND, Circuit Judge.  Couture was charged as follows:

"That heretofore, and on or about the 5th day of July, in the year of our Lord 1916, at the Standing Rock Indian reservation, in the county of Sioux, state and district of North Dakota, and within the jurisdiction of this court, one Joseph Couture, late of said county, state, and district aforesaid, then and there being, did willfully, unlawfully, and feloniously take, steal and carry away one bay horse then and there the property of the United States of America, and held in trust for an Indian known as Edward Takes-the-Shield, of the Standing Rock Indian reservation; the said Edward Takes-the-Shield being then and there an Indian under the charge of a superintendent of an Indian reservation, which said property was of the value of five hundred dollars ($500)."

He demurred to the indictment on the ground that it did not state facts sufficient to constitute a crime against the United States.  If the indictment charges the stealing of United States property, it is good; otherwise not.  As the same question was raised by motion for a directed verdict, we prefer to consider the matter on that assignment. The bill of exceptions has attached to it a certificate of the trial judge that the bill contains all the evidence taken at the trial.  From the bill it appears that evidence was introduced tending to show:

"That on the 5th day of July, 1916, one horse, branded 135, was stolen from land adjoining the town of Cannon Ball, claimed by the government to be a part of the Standing Rock Indian reservation in the state of North Dakota. That Edward Takes-the-Shield, a member of the Sioux Tribe of Indians, was born on the Standing Rock Indian reservation and had lived there all of his

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

life, and said Edward Takes-the-Shield was an allottee Indian, holding his land under what is called a trust patent issued by the government, and that his home was on said allotment on the 5th day of July, 1916. That he was under the charge of an Indian agent or superintendent. That one of his children, who had held an allotment under a trust patent, had died, leaving said Edward Takes-the-Shield as sole heir. That the allotment of said deceased child had been sold under the direction of the Secretary of the Interior and the proceeds deposited with the Indian agent on the Standing Rock Indian reservation. That the horse in question was purchased by the Indian out of proceeds of the aforesaid allotment, after a consultation with the approval of the Indian agent, from a white man named Beldon, who was not in any way connected with the agency.

"That Edward Takes-the-Shield arranged for the purchase of and selected the horse, the purchase taking place about three years before the alleged larceny. The evidence further showed that in the practice at that agency the horse could not be sold or disposed of in any way by the said Takes-the-Shield, without the consent of the Indian agent or superintendent. That the horse was when stolen, in the custody of Edward Takes-the-Shield, who had taken it with him to a celebration at the town of Cannon Ball, and he had the horse hobbled and feeding on land near where the celebration was held."

[1, 2] As authority for the indictment we are referred to section 47, U. S. Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1097 [Comp. St. § 10214]). This section provides for the punishment of stealing property of the United States.

The trial court had jurisdiction to punish the stealing of property of the United States but it had no general common-law jurisdiction to punish the stealing of the property of any one within its territorial jurisdiction. Before a man can be punished, his case must be plainly and unmistakably within the statute. United States v. Lacher, 134 U. S. 624, 10 Sup. Ct. 625, 33 L. Ed. 1080. An offense which may be the subject of criminal procedure is an act committed or omitted in violation of a public law either forbidding or commanding it. United States v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591. There are no common-law offenses against the United States. United States v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698; United States v. Hudson, 7 Cranch, 32, 3 L. Ed. 259; Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; Benson v. McMahon, 127 U. S. 457, 8 Sup. Ct. 1240, 32 L. Ed. 234; United States v. Eaton, supra.

It must be conceded, we think, that the horse stolen from the possession of Takes-the-Shield was not the property of the United States within the meaning of section 47 of the Penal Code. Conceding that larceny may be committed from a trustee in possession of personal property, it does not help the case of the prosecution for two reasons. The horse was not in the possession of the United States if they were trustees when it was stolen, and no statute of the United States punishes the stealing of property from the United States when they simply occupy the position of guardian towards the owner thereof. The civil cases cited by the prosecution, where the courts have maintained suits by the United States to protect the property of Indians, have no application, because in those cases the court having jurisdiction has the whole field of law and equity to which it may resort.

We are therefore of the opinion that, if the indictment charged the

stealing of United States property, the proof failed. If it alleged that the property was held in trust by the United States, then the proof did no show an offense punishable under the laws of the United States.

Judgment reversed.