## CINCINNATI, N. O. & T. P. RY. CO. v. DAVIS et al.

(Circuit Court of Appeals, Sixth Circuit.  November 13, 1923.)

### No. 3837.

1. **Appeal and error ⚮173(13)—Defense of assumption of risk, not raised at trial, not available on appeal.**

   Where no exceptions were taken to the trial court's declaration, after the case had been stated by counsel, that the doctrine of assumed risks would not apply, no exception for failure to instruct thereon was taken, no request to charge thereon was made, and defendant's motions for a directed verdict were not based on such ground, the issue was not before the court on appeal.

2. **Master and servant ⚮286(1)—Negligence question for jury.**

   Even if there is no conflict in the evidence on any material issue, employer's negligence is a question of fact for the jury, and not of law for the court, unless the evidence admits of no rational inference of negligence.

3. **Appeal and error ⚮843(2)—Whether minor misrepresented age held immaterial, in view of instruction that he was negligent.**

   Where, in an action for injuries received by a brakeman, the court did not submit the question of negligence in employing a boy 18 years of age, and instructed that he was contributorily negligent as a matter of law, the question whether plaintiff misrepresented his age in his application for work became immaterial.

4. **Master and servant ⚮286(15)—Negligence in throwing ties along tracks held for jury.**

   It was a question for the jury whether throwing ties promiscuously along railroad tracks and so near thereto as to endanger the lives of its employees in the performance of their duties was negligence, regardless of how long this practice had continued prior to the time plaintiff was injured while running ahead of his train to throw a switch.

5. **Master and servant ⚮286(41)—Negligence in failing to instruct inexperienced brakeman held for jury.**

   Where a brakeman, who was wholly inexperienced in the duties of his employment, after taking two or three student trips, was injured on his first trip for pay, the question whether the railroad was negligent in failing to instruct him as to the proper and safe method of discharging his duties was one for the jury.

6. **Damages ⚮132(12)—$6,000 for loss of hand and part of forearm held not excessive.**

   A verdict of $6,000 for loss of hand and part of forearm by a brakeman 18 years old *held* not excessive.

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action by Roddy Davis, and his next friend, John R. Davis, against the Cincinnati, New Orleans & Texas Pacific Railway Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Edward Colston, of Cincinnati, Ohio (Horace M. Carr, of Harriman, Tenn., on the brief), for plaintiff in error.

R. B. Cassell, of Harriman, Tenn. (John M. Davis, of Wartburg, Tenn., and Cassell, Harris & Evans, of Harriman, Tenn.), for defendants in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. Roddy Davis, a minor, by his next friend, John R. Davis, recovered a judgment in the District Court against the plaintiff in error, the Cincinnati, New Orleans & Texas Pacific Railway Company, for damages for personal injuries sustained by him while in the employ of that company as a brakeman.

At the time of the accident resulting in his injuries, Davis was employed as front brakeman on a train engaged in interstate commerce. In the performance of his duties as such brakeman, he had gotten down from the engine of the train, which was moving about 8 miles an hour, and started to run forward to throw a switch to permit the train to run on to a passing track. About two weeks prior to this, the railway company had caused a large number of cross-ties to be thrown along the side of the track for some distance back of the place where Davis alighted from the engine, to a point about 38 feet south of the switch. In running forward along the side of the track to throw the switch before the train reached it, Davis struck his foot against the end of one of these cross-ties and fell upon the east rail of the track. His arm was caught under the wheels of the engine or train and completely severed between the elbow and wrist.

The amended declaration contains a number of assignments of negligence, to all which the railway company entered a general denial. The court, however, submitted the case to the jury on but two assignments of negligence: First, negligence on the part of the railway company in throwing and distributing cross-ties promiscuously along the track, and in such near proximity thereto, as to menace the safety of plaintiff in the discharge of his duties; second, negligence on the part of the railway company in failing to instruct Davis as to the proper and safe method of discharging his duty, especially in reference to making this sort of a switch. Upon these issues the jury found for the plaintiff, and returned a verdict in his favor for the sum of $6,000. A motion for a new trial was overruled, and judgment was entered upon the verdict.

It is claimed on behalf of the plaintiff in error that the verdict and judgment are contrary to law for the reasons: First, that the danger presented by these cross-ties being distributed along the track in the proximity of this switch was a risk assumed by Davis as incident to his employment; second, that the verdict and judgment are not sustained by any evidence.

[1] The question of assumption of risks is not presented by this record. No exceptions were taken to the declaration of the court, after the case had been stated by counsel, that the doctrine of assumed risks would not apply to this case. But part of the charge is copied into the record, and no exceptions were taken to the charge of the court for failing, if it did fail, to instruct the jury upon the question of assumed risk.

Nor does it appear that any request to so charge was made and refused. The motion for a directed verdict, made at the conclusion of the plaintiff's evidence, was based upon the proposition that no negligence was shown on the part of the railway company. The motion made at the conclusion of all the evidence was not general in its terms,

but was based upon two specific grounds: First, that, if Davis' testimony in reference to the directions given him by the engineer were true, nevertheless the engineer must have intended that Davis would perform this duty in a sensible manner; second, that Davis' own negligence was the sole cause of the accident. For this reason the motions for a directed verdict did not raise the question of assumption of risk.

[2] It is also claimed that the verdict and judgment are contrary to law, for the reason that there is no evidence to support this verdict. In that connection it is insisted that there is no conflict in the evidence upon any material issue. Nevertheless, the inference to be drawn from this undisputed evidence was a question of fact for the jury. In a case of this character it is only when the evidence admits of no rational inference of negligence that the question becomes one of law for the court.

[3] In view of the fact that the trial court did not submit to the jury the assignment of negligence on the part of the railway company in employing the plaintiff, a boy 18 years of age, at the hazardous occupation of brakeman on one of its trains, and further instructed the jury that the plaintiff was of sufficient age and understanding to take reasonable care of himself, and that as a matter of law, he was guilty of contributory negligence that directly contributed to his injury, the question of whether Davis did or did not misrepresent his age in his written application for employment becomes wholly immaterial. The charge in this respect could not have been more favorable to the railway company, if Davis had in fact been 21 years of age at the time he entered its employ. The plaintiff in error excepted to the charge of the court in submitting to the jury the two assignments of negligence on its part above stated.

[4] The evidence discloses that this train was moving northward on the north-bound track; that to the east of this track a large number of cross-ties had been distributed by the company in such a promiscuous manner, and so near the track and switch, which was also upon the east side of the track, as to be extremely dangerous, and to present an extraordinary hazard to the safety of a brakeman alighting upon that side of the track for the purpose of running forward to throw the switch. It is insisted that this was in furtherance of a system of track repair in operation along the entire line of the company's track, and essential to the expeditious and economical repair of its roadbed. However that may be, it was the duty of the railway company to exercise reasonable care to provide its employés a safe place in which to work, consistent with the nature of the employment. The company knew that in the operation of its railroad it would become necessary, from time to time, for brakemen to alight from the train and run ahead of it to throw switches. Regardless of how long this system or practice had been in operation upon this road, prior to the time Davis entered its employ, it was a question for the jury to determine whether the throwing of ties promiscuously along its tracks, and so near thereto as to endanger the lives of its employés in the performance of their duties, was negligence, or evidenced a negligent disregard of and failure to

perform its duty to exercise reasonable care to furnish its employés a safe place to work.

It is claimed, however, that the space between the north-bound track and the south-bound track was practically unobstructed. That, of course, was a fact to be considered by the jury in determining the question of negligence on the part of the company in throwing ties on the east side of the track. In that connection, however, it further appears from the evidence that, if Davis had alighted on that side it would have been necessary for him, in order to reach the switch, to incur the peril of crossing the tracks ahead of a moving train.

The evidence does not disclose that there was any established rule or custom as to the manner in which this service should be performed. Undoubtedly, under ordinary circumstances, the natural way would be to alight from the engine on the switch side, rather than to attempt to cross the tracks in front of the moving train. Whether Davis, under the circumstances, in which he was placed, the rapidity with which he had to decide, should have selected the space between the tracks, instead of alighting on the switch side of the track, where the ties were placed, is no longer a question in this case. The court instructed the jury that in this respect he was guilty of negligence contributing to his injury. Under the facts and circumstances disclosed by the evidence, the court did not err in submitting to the jury the question of negligence on the part of the railway company in distributing these ties along its tracks, and so near thereto as to increase the hazard of the employment.

[5] Nor was it error on the part of the trial court to submit to the jury the second assignment of negligence above stated. It appears from the undisputed evidence that Davis was wholly inexperienced in the duties of his employment; that the railway company was fully advised of that fact, and, being so advised, it required him to take two or three student trips. At the time he received his injury he was returning on his first round trip for pay. The fact that he was employed as a section hand by this company for perhaps a year prior to his employment as a brakeman would not necessarily have afforded him either experience or information as to the duties of a brakeman. The presence of these cross-ties that had been thrown by the company along the side of the track created a sudden emergency, concerning which the company had neither warned him of his danger, nor instructed him as to the manner in which he should perform this dangerous service. Railway Co. v. Ward, 252 U. S. 18, 40 Sup. Ct. 275, 64 L. Ed. 430. It was clearly a question for the determination of the jury whether the company's failure in these respects, under the facts and circumstances of this case, was or was not negligence.

[6] The assignment of error that the verdict is excessive is without merit.

For the reasons stated, the judgment of the District Court is affirmed.